**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**LORAINE GLENN,**

**Plaintiff,**

**vs.** **No. CIV 05-0730 RB/WDS**

**SCIREX CORPORATION,**
**a foreign corporation,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on Defendant's (Scirex's) Motion for Summary Judgment (Doc. 26), filed on March 31, 2006. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1332. Ms. Glenn alleges discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*. ("ADA") and retaliatory discharge under state law. Having considered the submissions of counsel, relevant law, and being otherwise fully advised, I find that this motion should be granted with respect to the ADA claim, and denied with respect to the retaliatory discharge claim.

**I. Background.**

Plaintiff ("Glenn"), a registered nurse, was employed by Scirex as a Regional Clinical Research Coordinator ("RCRA") from August 2000 through September 2003. (Statement of Undisputed Material Facts ¶ 2; Pretrial Order at 3.) Scirex provides clinical research trial services to pharmaceutical companies to evaluate the safety and efficacy of new drugs. (Stat. Undisp. Mat. Facts ¶ 1; Glenn Depo. at 23.) An RCRA manages all aspects of clinical trials at assigned clinical sites to ensure patient safety, adherence to appropriate safety regulations, and data integrity. (Stat. Undisp. Mat. Facts ¶ 3.)

The position of RCRA requires travel between destination cities and to and from research facilities on a very tight, pre-set schedule. (Stat. Undisp. Mat. Facts ¶ 6.) Glenn's position required her to travel all over the United States. (Stat. Undisp. Mat. Facts ¶ 7.) According to the job description, an RCRA must be able to "perform overnight business travel on an annualized average of 70-80%." (Def. Ex. A.) Required physical tasks include the ability "to stoop, stand, sit, bend, reach above head, and lift up to 30 pounds" as well as the ability to "use various means of travel." (Def. Ex. A.)

In December 2002, Glenn injured her right shoulder while lifting her laptop computer over her head on an airplane. (Stat. Undisp. Mat. Facts ¶ 10; Glenn Depo. at 37; Pl. Ex. C.) A few days later, she exacerbated this injury, again by lifting her laptop computer over her head on an airplane. (Stat. Undisp. Mat. Facts ¶ 11.)

In April 2003, Glenn underwent surgery for a torn rotator cuff. (Stat. Undisp. Mat. Facts ¶ 13.) It was hoped that Glenn would fully recover her range of motion and physical capacity. (Glenn Depo. at 64-65.) Unfortunately, despite her best efforts at physical therapy, Glenn did not regain the full use of her right arm. (*Id*.)

In September, 2003, Glenn underwent a physical work performance evaluation with James M. Lukes OTR/L, CHT, who released her to return to work with the following restrictions:

> Client may be able to return to former job/occupation if the following modifications are made to work tasks, station, schedule, practices, or environment, if feasible. Client should avoid lifting of items heavier than 12 pounds above eye level. Client should check all baggage to avoid the possibility of having to lift bags overhead in an airplane. Client should limit general two-handed lifting to 24 pounds, and pull suitcase and/or wheeled briefcase with the left arm. Client should carry no more than 29 pounds in the left hand and 14 pounds in the right hand. If overhead reaching is required, the client should use a step stool, if available.

(Stat. Undisp. Mat. Facts ¶ 14; Pl. Ex. C.)  The report stated that Glenn was able to sustain a medium level of work for an eight hour day, so long as she observed the imposed restrictions.  (Pl. Ex. C.)

Glenn requested a return to work.  (Stat. Undisp. Mat. Facts ¶ 15; Pl. Ex. A.)  In order to accommodate her restrictions, Glenn proposed that she would check her luggage, use the services of flight crews and hotel and airport baggage handlers, and limit the pulling of wheeled suitcases and briefcases.  (Pl. Ex. A.)

On September 29, 2003, Denise M. Dzieka, Director of Human Resources for Scirex, notified Ms. Glenn that Scirex would be "delighted to have [Glenn] back . . . with no restrictions."  (Pl. Ex. D.)  On January 14, 2004, Scirex wrote that Glenn's proposed workplace modifications were not feasible for an RCRA at Scirex, and that there were no other positions available at Scirex for Glenn.  (Pl. Ex. E.)

Glenn filed a timely charge of discrimination with the Equal Employment Opportunity Commission and received a right to sue letter.  (Compl. ¶ 5.)  On May 10, 2005, Glenn brought suit in the Second Judicial District Court of the State of New Mexico, alleging claims for disability discrimination under the ADA and retaliatory discharge under state law.  Scirex timely removed the matter to this Court.

Scirex moved for summary judgment on the grounds that (1) Ms. Glenn is not substantially limited in any major life activity, (2) Ms. Glenn has no evidence of retaliation, and (3) her requested accommodation is unreasonable.

**II.  Summary Judgment Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir.2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id*.

**III. Discussion.**

**A. Whether Glenn is disabled within the meaning of the ADA.**

The ADA prohibits employment discrimination against qualified individuals with disabilities. *See* 42 U.S.C. § 12112. To establish a prima facie case of disability discrimination, an employee must show: (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) she was discriminated against because of her disability. *Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1118 (10th Cir.2004); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1128 (10th Cir.2003).

Scirex argues that Glenn is not disabled within the meaning of the ADA. "Disability under the ADA is a term of art." *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1230 (10th Cir.1999). The ADA defines disability as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2)(A-C). Glenn argues that she qualifies as disabled under Subsection A in that she has an actual physical impairment.

In order to establish an actual impairment under § 12102(2)(A), Glenn must (1) have a recognized impairment; (2) identify one or more appropriate major life activities; and (3) show that

the impairment substantially limits one or more of those activities. *Doebele*, 342 F.3d at 1129. The first two elements are questions of law; the third is a question of fact that may be decided by the court on summary judgment. *Doebele*, 342 F.3d at 1129, 1130 n. 5. Scirex does not dispute that Glenn's shoulder condition constitutes a recognized impairment. Thus, the questions are whether Glenn has identified one or more appropriate major life activities, and whether the impairment substantially limits one or more of those activities.

"Major life activities" are those activities that are of central importance to daily life. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002). They are basic activities that the average person in the general population can perform with little or no difficulty. 29 C.F.R. § 1630.2(i). Examples of major life activities include activities such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing, lifting, and reaching. *Id*. The "touchstone" for determining whether an activity qualifies as a major life activity is the activity's significance in daily life to the average person. *See Bragdon v. Abbott*, 524 U.S. 624, 638 (1998).

In order to identify "major life activities," a plaintiff "must articulate with precision the impairment alleged and the major life activity affected by that impairment" and the court must analyze only those activities identified by the plaintiff. *Doebele*, 342 F.3d at 1129. Glenn asserts that her impairment affects the major life activities of working, sleeping, caring for herself, shopping, cooking, cleaning, ironing, walking her dogs, and picking up her grandchildren. (Pretrial Order at 5; Pl. Br. at 3-4.)

Scirex acknowledges that working, sleeping, and caring for one's self have been recognized as major life activities. (Reply Br. at 3-4.) *See MacKenzie v. City and County of Denver*, 414 F.3d

1266, 1275 (10th Cir.2005) (working); *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999) (sleeping); *Holt v. Grand Lake Mental Health Center, Inc.*, 443 F.3d 762, 766 (10th Cir.2006) (caring for one's self). However, Scirex contends that shopping, cooking, cleaning, ironing, walking dogs, and picking up grandchildren are not major life activities. (*Id*.) Scirex is correct.

Major life activities do not include those activities that, although important to the individual plaintiff, are not significant within the meaning of the ADA. *See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir.1998) (holding that gardening, golfing and shopping are not major life activities). Although cooking and cleaning are not separate major life activities, they are components of the major life activity of caring for one's self. *Holt*, 443 F.3d at 768 (*citing Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2d Cir.2002)). However, shopping, ironing, walking dogs, and picking up grandchildren are not the types of activities that are generally deemed major life activities under the ADA. *See* 29 C.F.R. § 1630.2(i). Glenn has not cited to, and research has not revealed, a case that holds that shopping, ironing, walking dogs, and picking up grandchildren qualify as major life activities. However, the Court will consider these activities, along with cooking and cleaning, under the rubric of the major life activity of caring for one's self. Glenn has satisfied the second component by identifying working, sleeping, and caring for herself as major life activities affected by her impairment.

The critical question is whether Glenn's shoulder condition substantially impairs her ability to perform the major life activities of working, sleeping, or caring for herself. The Supreme Court has noted the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor*, 534 U.S. at 197; *Holt*, 443 F.3d at 766. The existence of a disability is evaluated on a case-by-case basis, such that a plaintiff must offer "evidence that the extent

of the limitation caused by their impairment in terms of their own experience is substantial." *Toyota Motor*, 534 U.S. at 198; *see also Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240-41 (10th Cir.2001).

"A physical or mental impairment is substantially limiting if the affected individual is: (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Doebele*, 342 F.3d at 1130 (*citing Pack*, 166 F.3d at 1305). In making this determination, the Court considers three factors: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment." *Doebele*, 342 F.3d at 1130. The Court also considers "any mitigating or corrective measures utilized by the individual, such as medications." *Id.*

Thus, in order to establish that she was substantially limited in the major life activities she identified, the evidence, construed in the light most favorable to Glenn, must show that she was unable to perform these activities, or was significantly restricted in her ability to perform them when compared to the average person in the general population.

Glenn argues that the major life activities of working, sleeping, and caring for herself are substantially impaired by her shoulder condition. When the major life activity at issue is that of working, a plaintiff must show that she is unable to perform either a class of jobs or a broad range of jobs in various classes. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491-92 (1999) (*quoting* 29 C.F.R. pt. 1630, App. § 1630.2(j)(3)(i)). "The inability to perform a single, particular

job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

Glenn's restrictions did not preclude her from working or performing most jobs. *See Sutton*, 527 U.S. at 492 ("[I]f a host of different types of jobs are available, one is not precluded from a broad range of jobs."). In May 2004, a health insurance company hired Glenn as a Medicaid reviewer and subsequently assigned her to its quality improvement department. (Glenn Depo. 56.) In this capacity, Glenn performs physician site visits for credentialing and audits physicians for insurance compliance throughout Northern New Mexico. (*Id*.) Because Glenn has not introduced evidence of an inability to work in a broad class of jobs, she was not substantially disabled in the major life activity of working. *See Lusk*, 238 F.3d at 1240; *see also Brunko v. Mercy Hosp.*, 260 F.3d 939, 942 (8th Cir.2001) (holding that plaintiff, a nurse, was not substantially limited in life activity of working because she worked in several nursing jobs after being unable to work in a nursing position that required heavy lifting). Construed in the light most favorable to Glenn, the record demonstrates that her impairment does not substantially limit her ability to perform a broad class of jobs.

In order to establish that she is substantially limited in the major life activity of sleeping, Glenn is required to establish that she is unable to sleep or was significantly restricted as to the condition, manner, or duration of her ability to sleep as compared to the average person in the general population, taking into consideration the three factors and any mitigating or corrective measures. *Pack*, 166 F.3d at 1305. Because Glenn does not allege that she was completely unable to sleep, the issue concerns Glenn's ability to sleep as compared to the average person in the general population.

Glenn testified in her deposition that she is unable to sleep on her right side because "it just starts aching after a while" and if she does fall asleep on her right side, the aching wakes her up.

(Glenn Depo.) Sleeping is not substantially limited just because an individual has some difficulty sleeping. *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1254 (10th Cir.2001); *Pack v. Kmart Corp.*, 166 F.3d at 1306 n. 6. Glenn presented no evidence that her ability to sleep is significantly lower than that of the average person in the general population. Construed in the light most favorable to Glenn, the record is insufficient to establish that her impairment substantially limits her ability to sleep.

Glenn also asserts that her impairment substantially limits her ability to care for herself. Caring for one's self "encompasses normal activities of daily living; including feeding one's self, driving, grooming, and cleaning home." *Holt*, 443 F.3d at 768 (quotation omitted). Glenn testified in her deposition that she has to ask her husband to pull heavy items, such as hams, out of the oven when she cooks, and she is unable to reach up and pull things off the top shelf in the kitchen or closets. (Glenn Depo. at 48-49.) She does not sweep her patio, move furniture when vacuuming, or perform other awkward or uncomfortable activities around the house. (*Id*.) Glenn cannot wear bras with straps, and is unable to fasten her bra behind her back. (*Id*.)

With respect to the activities of shopping, walking dogs, and picking up her grandchildren, Glenn testified in her deposition that she must limit the amount of groceries she puts into her shopping cart because she is unable to steer the cart. (Glenn Depo. at 49.) Glenn must ask the packers not to pack her shopping bags "very heavy" and it takes her "twice as long" to get her groceries into the house. (*Id*.) Glenn refrains from walking her two large dogs because she might not be able to restrain them. (Glenn Depo. at 47-48.) She is unable to lift her grandchildren because each grandchild weighs more than 24 pounds. (Glenn Depo. at 49.) With respect to ironing, Glenn can iron with her left hand, but it is awkward and ineffective. (Glenn Depo. at 59.) Glenn's testimony established that she is limited, but not precluded, from shopping, caring for children, taking care of

pets, or ironing.

Summary judgment is appropriate where the evidence shows a plaintiff is restricted from doing a few specific tasks, but can otherwise perform a variety of activities. *See Holt*, 443 F.3d at 766. Glenn presented no evidence that her ability to care for herself is significantly lower than that of the average person. Her evidence of lifting and pulling restrictions is likewise insufficient. A twenty-pound lifting restriction is not substantially limiting on its face. *See Rakity v. Dillon Cos. Inc.*, 302 F.3d 1152, 1160 (10th Cir.2002). Construed in the light most favorable to Glenn, the record does not establish that her impairment substantially limits her ability to care for herself.

Glenn has submitted no evidence she experienced greater difficulty than anyone else in working, sleeping, or caring for herself. Without this evidence, a fact-finder cannot make the comparison between Glenn and the "average person" as ADA requires. *Toyota Motor*, 534 U.S. at 198; *Lusk*, 238 F.3d at 1241; *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 497 (10th Cir.2000). Although the Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, . . . that party must identify evidence which would require submission of the case to a jury." *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1402 (10th Cir.1997). Construed in the light most favorable to Ms. Glenn, the record is insufficient to show that Glenn suffers from an impairment that substantially limits a major life activity. Scirex is entitled to summary judgment on the ADA claim because Glenn has failed to demonstrate an actual impairment within the meaning of the ADA.

**B. Whether Glenn is entitled to summary judgment on the retaliatory discharge claim.**

Scirex argues that it is entitled to summary judgment on the retaliatory discharge claim because Glenn has no evidence of retaliation. Scirex relies on Glenn's deposition testimony wherein

she stated she did not have a factual basis to believe Scirex acted with a retaliatory motivation

In order to establish a claim for retaliatory discharge under New Mexico common law, a plaintiff must establish: (1) that she was discharged because she performed an act that public policy has authorized or would encourage; and (2) that there is a causal connection between the action and the retaliatory discharge by the employer. *Chavez v. Manville Products Corp.*, 108 N. M. 643, 647, 777 P.2d 371, 375 (1989). Additionally, Section 52-1-28.2, NMSA (1990) prohibits an employer from discharging, threatening to discharge, or otherwise retaliating in the terms or conditions of employment against a worker who seeks workers' compensation benefits. *Id.*; *Michaels v. Anglo American Auto Auctions, Inc.*, 117 N.M. 91, 94, 869 P.2d 279, 282 (1994).

It is axiomatic that there is rarely documentary or other direct evidence of employment retaliation. *Chavez*, 108 N. M. at 648, 777 P.2d at 376 (1989). A plaintiff may prove retaliatory discharge through indirect evidence. *Weidler v. Big J Enters., Inc.*, 124 N.M. 591, 953 P.2d 1089 (Ct. App. 1998). Glenn has presented evidence that she was employed by Scirex as an RCRA for three years, she received very good job evaluations, and had no disciplinary problems. (Stat. Undisp. Facts 2; Glenn Depo. at 119-20.) After she was injured, she filed a workers' compensation claim. (Stat. Undisp. Facts 10, 11, and 13; Glenn Depo. at 60-64.) Glenn recovered from her injury and was released to return to work. (Stat. Undisp. Facts 14.) Glenn requested a return to work with an accommodation at no monetary cost to Scirex. (Pl. Ex. A.) Scirex refused her request. (Pl. Exs. B and C.)

From the evidence, considered in the aggregate and construed in the light most favorable to Glenn, a reasonable jury could conclude that Scirex refused to return Glenn to work in retaliation for filing a workers' compensation claim. Glenn has submitted sufficient evidence to preclude summary

judgment on her retaliatory discharge claim.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 26), filed on March 31, 2006, is **GRANTED WITH RESPECT TO THE ADA CLAIM AND DENIED AS TO THE RETALIATORY DISCHARGE CLAIM**.

______________________________
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**